IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THE BRECKENRIDGE FUND, LLC, a New York limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> FONIX CORPORATION, a Delaware Corporation, FONIX SPEECH, INC., a Delaware Corporation, THOMAS A. MURDOCK, an individual, ROGER D. DUDLEY, an individual, <br><br> Defendants. | ORDER AND MEMORANDUM DECISION <br><br><br><br> Case No. 2:07-cv-279 |

Before the court is the Motion for Prejudgment Writ of Attachment (dkt. #3) filed by Plaintiff The Breckenridge Fund, LLC ("Breckenridge").  Breckenridge seeks the writ against Defendants Fonix Corporation ("Fonix Corp.") and Fonix Speech, Inc. ("Fonix Speech") (collectively, "the Fonix Defendants") to collect on monies owed from a settlement of a dispute brought in New York State Court against Fonix Corp.  Under that settlement agreement, Fonix Corp. agreed to make substantial monthly payments, but has failed to make a full payment since April of 2006.

Because Breckenridge has a substantial likelihood of success on the merits under Utah's Uniform Fraudulent Transfer Act ("UFTA"), and because Breckenridge satisfies the remaining

requirements for attachment under the Utah Rules of Civil Procedure, the court GRANTS the motion.

## **FINDINGS OF FACT**

On September 13, 2005, Fonix Corp. and Breckenridge entered into a settlement agreement in the Supreme Court for the State of New York ("Settlement Agreement"). The Settlement Agreement was preceded by three separate lawsuits brought by Breckenridge against Fonix Corp. in New York State Court. Under the Settlement Agreement, Breckenridge and Fonix Corp. agreed to dismiss with prejudice all lawsuits against each other and Fonix Corp. agreed to pay Breckenridge a lump-sum payment of $1,600,000 within ten days of the settlement. Fonix Corp. also agreed to pay Breckenridge $130,000 by the fifteenth of each month for six months beginning November 15, 2005, and subsequently pay Breckenridge $165,000 for each of the following eight months. Consequently, Fonix Corp. agreed to pay the entire settlement obligation of $3,700,000 by December 15, 2006.

Breckenridge received the initial $1,600,000, as well as monthly payments on November 16, 2005, February 28, 2006, March 10, 2006, and April 4, 2006. Over the first six months, Fonix Corp. made only four of the six payments owed, with varying degrees of delinquency. Fonix Corp. subsequently made two partial payments of $25,000. Breckenridge has received no other payments from the Fonix Defendants and filed a fourth lawsuit in New York State Court due to Fonix Corp.'s failure to comply with the Settlement Agreement. On February 2, 2007, that court awarded summary judgment to Breckenridge, and entered a judgment in favor of Breckenridge for $1,601,735 about six weeks later.

After making only one monthly payment to Breckenridge, Fonix Corp. formally created

Fonix Speech on January 1, 2006.  On February 3, 2006, Individual Defendants Roger Dudley

and Thomas Murdock signed a Contribution Agreement between the Fonix Defendants.  The

Contribution Agreement purports to transfer assets valued at $20,000,000 from Fonix Corp. to

Fonix Speech in exchange for common stock in Fonix Speech.  The common stock represented

complete ownership in Fonix Speech; Fonix Corp. maintained a 100% controlling interest of

Fonix Speech.  As the Fonix Defendants explained to the court, "ownership of these shares gives

Fonix Corporation ownership of Fonix Speech . . . ."  (Defs.' Mem. Opp'n to Mot. for Prejudg.

Writ of Attach. at 34.)

Before creating Fonix Speech—but after entering into the settlement with

Breckenridge—Fonix Corp. reported in the Form S-1 filed with the Securities and Exchange

Commission that "[o]ur substantial and continuing losses since inception, coupled with

significant ongoing operating expenses, raise doubt about our ability to continue as a going

concern."  (Fonix Corp., Registration Statement (Form S-1), at 9 (Oct. 18, 2005), submitted

during the May 11 Hr'g as Pl.'s Ex. 3.)  In the same filing, Fonix Corp. noted "**substantial**

**risk** . . . that the existence and extent of the debt obligations . . . could adversely affect our

business, operations and financial condition, and we may be forced to curtail our operations," and

warned that "we could be forced into bankruptcy."  (Id. at 10 (emphasis added).)  In late 2005,

Fonix Corp.'s revenue was less than its operating expenses.  (May 11, 2007 Hr'g, Test. of T.

Murdock.)

In the Form 10-K for the fiscal year which ended December 31, 2006, Fonix Corp. again

warned that "[o]ur substantial and continuing losses since inception, coupled with significant

ongoing operating expenses, raise doubt about our ability to continue as a going concern."

(Fonix Corp., Annual Report (Form 10-K), at 13 (Dec. 31, 2005), submitted during the May 11

Hr'g as Pl.'s Ex. 5.)  Further indicating dim prospects, Fonix Corp. explained that "[i]n our

present circumstances, there is **substantial doubt** about our ability to continue as a going

concern absent significant sales of our products and telecommunication services, substantial

revenues from new licensing or co-development contracts, or continuing large sales of our

securities."  (Id. (emphasis added).)  Summing up its financial status, Fonix Corp. reported that

"[i]f we do not receive additional capital when and in the amounts needed in the near future, our

ability to continue as a going concern is in substantial doubt."  (Id. at 14.)

      In January of 2006, Fonix Corp. employed more than one hundred people.  (May 11, 2007

Hr'g, Test. of T. Murdock.)  Today, Fonix Corp. employs six people, most of whom—if not

all—are Fonix Corp.'s officers and directors, and also serve as officers and directors of Fonix

Speech.  (Id.)  As evidenced by the accounting mandated by the court's order dated May 1, 2007,

Fonix Speech actually pays the salaries of several—if not all—of these Fonix Corp. employees.

This includes the salaries of both Individual Defendants Mr. Murdock, the President and CEO of

Fonix Corp., and Mr. Dudley, the Vice-President and CFO of Fonix Corp.  On the date the court

ordered the accounting, Fonix Speech reported $260,599 total available cash.  Seven business

days later, Fonix Speech reported only $93,772 cash available.  Notably, none of that money

went towards "Operating Expenses," and virtually all of the money went towards salaries,

benefits, medical insurance, and rent.

      Recently, Fonix Speech entered into a transaction to sell Fonix Speech preferred stock.

Because this preferred stock is convertible into Fonix Corp. stock, Fonix Corp. raised

approximately $450,000 from this transaction in March or April of 2007.  Of this $450,000 none

was paid to Breckenridge.  And no effort was taken to compensate Breckenridge, even though the full amount owed under the Settlement Agreement was several months past due before the money was raised, and approximately one year had passed since Fonix Corp. last made a full payment to Breckenridge.

## ANALYSIS

Breckenridge seeks a writ of attachment to secure Fonix Speech's remaining cash.  "An attachment is a provisional remedy granted to the plaintiff in an action, which enables him to have property of the defendant seized by an officer and held in the custody of the law as security for the satisfaction of any judgment that he may recover."  In re McNeely, 51 B.R. 816, 818 (Bankr. D. Utah 1985).

To succeed in its writ of prejudgment attachment, the parties agree that Breckenridge must satisfy Utah Rules of Civil Procedure 64A and 64C.[1]  Rule 64A lays out the requirements for a prejudgment writ and Rule 64C describes additional requirements for a writ of attachment. Because Breckenridge satisfies: (1) the 64A requirements for prejudgment writ; and (2) the 64C requirements for a writ of attachment, the writ is proper.

## I.   Breckenridge Satisfies the Rule 64A Requirement for a Prejudgment Writ

Before the court may issue a prejudgment writ of attachment, Breckenridge must show a prejudgment writ is proper under Rule 64A.  Utah R. Civ. P. 64A(a) ("A writ of replevin, attachment or garnishment is available after the claim has been filed and before judgment only

---

[1]Under the Federal Rule of Civil Procedure, "all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held . . . ."  Fed. R. Civ. P. 64 (emphasis added).

upon written order of the court.").

Utah Rule of Civil Procedure 64A has four elements.  Specifically, Breckenridge must show: (A) "that the property is not earnings and not exempt from execution"; (B) "that the writ is not sought to hinder, delay or defraud a creditor of the defendant"; (C) "a substantial likelihood that the plaintiff will prevail on the merits of the underlying claim"; and (D) at least one additional element from an enumerated list provided by the rule.  Utah R. Civ. P. 64A(c) ("Grounds for a prejudgment writ include . . . all of the requirements listed in subsections (c)(1) through (c)(3) and at least one of the requirements listed in subsections (c)(4) through (c)(10) . . . .").  The court will address these in turn.

A.      The Property is not Earnings and not Exempt

First, the property for which Breckenridge seeks the writ is not earnings and is not exempt from execution.  See Utah R. Civ. P. 64A(c)(1) (Party seeking writ must show "that the property is not earnings and not exempt from execution . . . .").  The Fonix Defendants have not argued to the contrary.  Breckenridge satisfies the first element of prejudgment writ.

B.      The Writ is not Sought to Hinder or Delay the Fonix Defendants

Second, there is no evidence that Breckenridge seeks the writ simply to harm the Fonix Defendants.  See Utah R. Civ. P. 64A(c)(2) (Party seeking writ must show "that the writ is not sought to hinder, delay or defraud a creditor of the defendant . . . .")  On the contrary, the court notes Breckenridge is far more likely to collect on the substantial outstanding debt should the Fonix Defendants finally become sustainable business entities.  Again, the Fonix Defendants do not dispute this point.  Breckenridge satisfies the second element of the writ.

C.    <u>Breckenridge Has a Substantial Likelihood of Success on the Merits</u>

Third, Breckenridge has a substantial likelihood of success on the merits of its underlying claim under the UFTA.  <u>See</u> Utah R. Civ. P. 64A(c)(2) (Party seeking writ must show "a substantial likelihood that the plaintiff will prevail on the merits of the underlying claim . . . .").  Specifically, Breckenridge has a substantial likelihood of success under Utah Code section 25-6-5.

Under section 25-6-5(1)(a), "[a] transfer made . . . is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor . . . ."[2]  The UFTA also outlines indicia of fraud the court should consider when assessing a claim under this provision.  <u>See</u> <u>id.</u> § 25-6-5(2) ("To determine 'actual intent' under Subsection (1)(a), consideration may be given, among other factors, to [the enumerated factors] . . . .").

To succeed on the underlying claim, Breckenridge must show by clear and convincing evidence that Fonix Corp.'s transfer to Fonix Speech was done with the intent to defraud.  <u>Bradford v. Bradford</u>, 1999 UT App 373, ¶ 18, 993 P.2d 887 ("A creditor who claims a debtor transferred property with actual intent to defraud under section 25-6-5(1)(a) must establish that claim by clear and convincing evidence.").

_____

[2]Breckenridge is a creditor of Fonix Corp. under the UFTA, which explains "'Creditor' means a person who has a claim" and "'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  Utah Code Ann. § 25-6-2(3), (4) (2006).  The parties do not dispute that Breckenridge has a right to payment from Fonix Corp. under the Settlement Agreement.

7

Looking to the Rule's enumerated indicia of fraud, Breckenridge meets this higher

burden.  Lakeside Lumber Prods., Inc. v. Evans, 2005 UT App 87, ¶ 9, 110 P.3d 154 (quoting

Territorial Sav. & Loan Ass'n v. Baird, 781 P.2d 452, 462 (Utah Ct. App. 1989)) ("The existence

of 'fraudulent intent is ordinarily considered a question of fact, and may be inferred from the

existence of certain indicia of fraud' enumerated in the Act.").

The facts of this case support finding no fewer than six of the enumerated indicia of

fraud.

Unquestionably, Fonix Corp. retained control of the assets transferred to Fonix Speech

after the transfer, which is indicative of fraud under the UFTA.  See Utah Code Ann. § 25-6-

5(2)(b) (2006) ("To determine 'actual intent' . . . consideration may be given . . . to whether: . . .

(b) the debtor retained possession or control of the property transferred after the transfer . . . .").

As the 100% owner of Fonix Speech, Fonix Corp. maintained control over all of the transferred

assets.

Further evidencing Fonix Corp.'s fraudulent intent, the transfer of assets came after

Breckenridge had filed three lawsuits against Fonix Corp.  See id. § 25-6-5(2)(d) ("To determine

'actual intent' . . . consideration may be given . . . to whether: . . . (d) before the transfer was

made or obligation was incurred, the debtor had been sued or threatened with suit . . . .").

And Mr. Murdock testified that Fonix Speech is projected to make up to $5,000,000

profit in 2008, while Fonix Corp.'s profit projection is anything but rosy.  (May 11, 2007 Hr'g,

Test. of T. Murdock.)  Given Fonix Speech's prosperity and the dim prospects of Fonix Corp., a

factfinder could easily determine the transfer was substantially all of Fonix Corp.'s assets,

another badge of fraud.  See id. § 25-6-5(2)(e) ("To determine 'actual intent' . . . consideration

may be given . . . to whether: . . . (e) the transfer was of substantially all the debtor's

assets . . . .").

Providing additional evidence of intent to defraud, Fonix Corp. received complete

ownership of Fonix Speech in exchange for the transferred assets, establishing that Fonix Corp.

received reasonably equivalent value for the assets transferred to Fonix Speech.  See id. § 25-6-

5(2)(h) ("To determine 'actual intent' . . . consideration may be given . . . to whether: . . . (h) the

value of the consideration received by the debtor was reasonably equivalent to the value of the

asset transferred or the amount of the obligation incurred . . . .").

And satisfying yet another badge of fraud, Fonix Corp. qualifies as insolvent under the

UFTA.  Id. § 25-6-3 ("(1) A debtor is insolvent if the sum of the debtor's debts is greater than all

of the debtor's assets at a fair valuation.  (2) [Or a] debtor who is generally not paying his debts

as they become due is presumed to be insolvent."); see id. § 25-6-5(2)(i) ("To determine 'actual

intent' . . . consideration may be given . . . to whether: . . . (I) the debtor was insolvent or became

insolvent shortly after the transfer was made or the obligation was incurred . . . .").  Fonix

Corp.'s filings with the SEC, as well as Mr. Murdock's testimony, leave no doubt that Fonix

Corp.'s operating expenses exceeded its revenue.  And the case is before the court only because

Fonix Corp. did not pay debts owed to Breckenridge.

Finally—and most importantly to this case—is the suspect timing of the transfer.  See id.

§ 25-6-5(2)(j) ("To determine 'actual intent' . . . consideration may be given . . . to whether: . . .

(j) the transfer occurred shortly before or shortly after a substantial debt was incurred . . . .").  As

discussed, Breckenridge settled its claims against Fonix Corp. in September of 2005.  After

making the initial lump-sum payment and the first of fourteen monthly payments, Fonix Corp.

9

did not make another payment in 2005, failing to pay $130,000 owed in December of 2005.

Then Fonix Corp. created Fonix Speech in January of 2006 and transferred the assets to Fonix

Speech one month later.  Since transferring the assets to Fonix Speech, Fonix Corp. has made

only three additional full payments, each of which was extremely delinquent.  Although the

Fonix Defendants claim that Fonix Corp. considered spinning off Fonix Speech into a sub-entity

for several years, they presented no persuasive evidence to undermine the timing as powerful

evidence of fraud.  The fact that Fonix Corp. settled its suit with Breckenridge and then failed to

make the second monthly payment owed under the Settlement Agreement—and *then* created

Fonix Speech—provides compelling evidence that Fonix Corp. acted with the intent to defraud.

     In addition to the badges of fraud enumerated by the UFTA, other facts guide the court's

conclusion that the transfer was made with the intent to defraud.  The statute expressly authorizes

the court to consider facts beyond the enumerated indicia of fraud.  Id. § 25-6-5(2) ("To

determine 'actual intent' under Subsection (1)(a), consideration may be given, among other

factors . . . .") (emphasis added).  Accordingly, the court notes additional evidence which

supports the conclusion that Breckenridge has a substantial likelihood of success on the merits.

Fonix Speech directly pays the salaries of Fonix Corp. employees, including Individual

Defendant Mr. Murdock, who serves as Fonix Corp.'s President, CEO and Chairman of the

Board, and Individual Defendant Mr. Dudley, who serves as Fonix Corp.'s Vice-President and

CFO.  Additionally, Fonix Corp. recently raised approximately $450,000 and made absolutely no

effort to make the slightest good faith payment toward the excessively delinquent payments owed

to Breckenridge.

     Consequently, the court finds substantial likelihood that Breckenridge would succeed on

the merits, even under the clear and convincing standard.  Breckenridge satisfies the third

element under Rule 64A.

      D.      <u>Breckenridge Satisfies an Additional Element Under the Rule</u>

Finally, Breckenridge satisfies one additional element defined by 64A(c)(4) through

(c)(10).  <u>See</u> Utah R. Civ. P. 64A(c) ("Grounds for a prejudgment writ include . . . all of the

requirements listed in subsections (c)(1) through (c)(3) and at least one of the requirements listed

in subsections (c)(4) through (c)(10) . . . .").  Breckenridge satisfies subsection (c)(5), as well as

subsection (c)(10).

Subsection (c)(5) mirrors the language of the UFTA discussed above, allowing a

prejudgment writ if "the defendant has assigned . . . the property <u>with intent to defraud</u>

<u>creditors</u> . . . ."  Utah R. Civ. P. 64A(c)(5) (emphasis added).  For the reasons stated above in

Section C, the court finds Fonix Corp. transferred the assets to Fonix Speech with the intent to

defraud Breckenridge.

Additionally, the court finds probable cause that Breckenridge will lose the remedy if the

court does not issue the prejudgment writ, satisfying subsection (c)(10).  Utah R. Civ. P.

64A(c)(10) (Requiring party seeking writ show "probable cause of losing the remedy unless the

court issues the writ . . . .").  In addition to Fonix Corp.'s decision not to use any of its recently

acquired $450,000 to pay any part of the ten missed payments to Breckenridge, the court also

considers the speed with which the Fonix Defendants have burned through money.  On May 1,

the court mandated the Fonix Defendants keep an accounting of all funds and expenditures.  In a

report provided to the court on May 11, Fonix Speech revealed the cash available dwindled from

$260,599 to $93,772 in only seven business days.  Most of the expended money paid the salaries

of those responsible for perpetrating this fraud on Breckenridge, and according to the report, none of the money went towards "Operating Expenses." Failure to issue the writ would not only deprive Breckenridge this possibility of recouping a fraction of what it is owed, but it appears the Fonix Defendants would simply pay additional salary to those responsible, rather than invest the money to develop products for the Fonix Defendants. Accordingly, Breckenridge also satisfies subsection (c)(10).

The court holds Breckenridge satisfies the four elements for a Rule 64A Prejudgment Writ.[3]

## II.   **Breckenridge Satisfies the Rule 64C Requirement for a Writ of Attachment**

Breckenridge also satisfies the additional requirements of Rule 64C for a writ of attachment. As the rule explains, a writ of attachment "is available to seize property in the possession or under the control of the defendant," but has three elements "[i]n addition to the grounds required in Rule 64A . . . ." Utah R. Civ. P. 64C. Because (1) "defendant is indebted to the plaintiff"; (2) "the writ is authorized by statute"; and (3) "payment of the claim has not been secured by a lien upon property in this state" Breckenridge is entitled to a writ of attachment. Id.

First, there is no dispute that Fonix Corp. is indebted to Breckenridge under the Settlement Agreement.

Second, attachment is a proper remedy under the UFTA, which expressly authorizes such

---

[3]Rule 64A also requires that Breckenridge file "an affidavit stating facts showing the grounds for relief and other information required by these rules . . . ." Utah R. Civ. P. 64A(b). The court concludes Breckenridge has satisfied this requirement because Marc Sharinn filed a declaration and then swore to the declaration under oath, and the Fonix Defendants were afforded the opportunity to cross-examine Mr. Sharinn.

a writ.  Utah Code Ann. 25-6-8(1)(b) ("In an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain . . . an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Utah Rules of Civil Procedure . . . .").

Third, Breckenridge does not have a lien against this property of the Fonix Defendants.

Having already explained why Breckenridge satisfies the grounds required by Rule 64A, the court rules Breckenridge satisfies all requirements of Rule 64C.

Consequently, a writ of attachment is proper.

## CONCLUSION

For the foregoing reasons, the court GRANTS Breckenridge's Motion for Prejudgment Writ of Attachment (dkt. #3).  The court orders Fonix Speech's remaining $93,722 placed in possession of an officer of the court.[4]  Before Breckenridge may access the money, Breckenridge must post a bond of $90,000.


SO ORDERED this 22nd day of May, 2007.

BY THE COURT:

TENA CAMPBELL
Chief Judge

---

[4]In its Notice of Compliance, the Fonix Defendants informed the court that its law "firm is holding these funds . . . ."  Because counsel is an officer of the court, the firm may continue to hold the funds or turn the money over to the court.

13